UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSE REYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:15-cv-00086-SLC |
| ) | |
| OUTDOOR DETAIL, INC., ) | |
| ) | |
| Defendant. ) | |

# OPINION AND ORDER

Plaintiff Jose Reyes filed this case against his former employer, Defendant Outdoor Detail, Inc. ("Outdoor Detail"), in Allen Superior Court on March 2, 2015, advancing a claim of national origin discrimination under 42 U.S.C. § 1981 and a state-law retaliation claim for asserting his rights under the Indiana Worker's Compensation Act, that is, a *Frampton* claim.[1] Outdoor Detail removed the case here under 28 U.S.C. § 1331 on the basis of Reyes's § 1981 claim.[2]

Now before the Court is Outdoor Detail's motion for summary judgment (DE 16), together with a supporting memorandum (DE 17), filed on April 19, 2016, asserting that Outdoor Detail is entitled to judgment as a matter of law on both of Reyes's claims. Reyes filed a response in opposition to the motion (DE 20) on June 3, 2016, together with his affidavit in

---

[1] *In Frampton v. Central Indiana Gas Co.*, the Indiana Supreme Court articulated a public policy exception to the employment at-will doctrine by holding that an employee terminated for filing a claim under the Indiana Worker's Compensation Act could sue his employer for unlawful retaliation. 297 N.E.2d 425, 428 (1973).

[2] Subject matter jurisdiction under 28 U.S.C. § 1331 is proper in this Court. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 7).

support (DE 20-1). Outdoor Detail timely filed a reply brief (DE 25), together with supplemental evidence (DE 26), and Reyes later submitted supplemental case law to the Court (DE 28; DE 29).[3] The motion for summary judgment is ripe for ruling.

For the following reasons, the Court will GRANT Outdoor Motion's motion for summary judgment as to Reyes's § 1981 discrimination claim. The Court will decline to exercise supplemental jurisdiction over Reyes's *Frampton* claim and will remand the case to state court.

## I. FACTUAL AND PROCEDURAL BACKGROUND [4]

Reyes, who is Hispanic and has brown skin, filed this case against Outdoor Detail in Allen Superior Court on March 2, 2015, alleging that Outdoor Detail discriminated against him on the basis of his national origin in violation of § 1981, and that Outdoor Detail retaliated against him for asserting his rights to worker's compensation benefits in violation of Indiana law.[5] (DE 2). On April 14, 2015, Outdoor Detail removed the case here on the grounds that Reyes's § 1981 discrimination claim created federal-question jurisdiction under 28 U.S.C. § 1331. (DE 1).

---

[3] Outdoor Detail also filed a motion to strike (DE 23) certain portions of Reyes's affidavit, together with a supporting memorandum (DE 24), and Reyes timely responded (DE 27). Because summary judgment should be granted in Outdoor Detail's favor on Reyes's § 1981 discrimination claim even when Reyes's affidavit is considered in its entirety, and because the Court is declining to exercise supplemental jurisdiction over Reyes's *Frampton* claim, the motion to strike will be DENIED AS MOOT.

[4] For summary judgment purposes, the facts are recited in the light most favorable to Reyes, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[5] Although Reyes in one sentence of his complaint briefly references a retaliation claim under § 1981 (DE 2 at 4 ¶ 10), that reference appears to be a scrivener's error, as the body of his complaint advances only a discrimination claim under § 1981 and a *Frampton* claim under state law. Nor do the parties mention a § 1981 retaliation claim in their briefs. (*See* DE 17; DE 20; DE 25). In any event, there is no evidence that Reyes ever complained about discrimination to Outdoor Detail, and thus, any § 1981 claim based on retaliation would fail at the outset. *See Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (explaining that one of the elements of a § 1981 retaliation claim is showing that the plaintiff engaged in protected activity (citation omitted)).

### A. Timeline of Relevant Events

Reyes worked for Outdoor Detail on a seasonal basis for several months in each 2011, 2012, and 2013. (DE 16-1 at 1-2 ¶¶ 5, 8-12, 15; DE 20-1 at 1 ¶ 2; DE 26). His job duties included installing sprinklers, fitting pipes, general labor, driving, and performing some demolition. (DE 20-1 at 1 ¶ 3).

Reyes was first hired by Outdoor Detail on April 11, 2011. (DE 16-1 at 1 ¶ 5). Within a few months, Reyes was reprimanded after being caught smoking on a hospital work site that had a no-smoking policy on its grounds. (DE 16-1 at 1 ¶ 7). Once reprimanded, Reyes walked one-half mile off the property to smoke on a public road. (DE 16-1 at 1 ¶ 7). Outdoor Detail terminated Reyes's employment when he returned to work on July 5, 2011, for walking off the job site. (DE 16-1 at 1 ¶ 7).

In September 2012, Reyes begged the owner of Outdoor Detail, Kevin Mullendore, to give him another chance and rehire him. (DE 16-1 at 1 ¶ 8). Mullendore decided to do so and rehired Reyes. (DE 16-1 at 1 ¶ 8). In December 2012, as work began to slow down for the season, Reyes notified Outdoor Detail that he had other work to do, and he stopped showing up for work. (DE 16-1 at 1 ¶ 9).

On March 12, 2013, Reyes returned to work at Outdoor Detail for the season. (DE 16-1 at 1 ¶ 10). On April 10, 2013, Reyes fell on the job, injuring his back, shoulder, and other parts of his body. (DE 20-1 at 2 ¶ 7). "Shortly after" being injured, Reyes reported the injury to Outdoor Detail (he does not say to whom specifically) and asked to use his worker's compensation insurance. (DE 16-1 at 2 ¶ 8).

On April 24, 2013, Mullendore walked into a warehouse and found Reyes not working

3

and talking to another employee, hindering that employee from performing his tasks. (DE 16-1 at 2 ¶ 12). Reyes was told to find work to do but that sweeping the floor was not an option. (DE 16-1 at 2 ¶ 12). Reyes started sweeping the floor, and a foreman told him: "[Mullendore] did not want you sweeping, find something productive to do." (DE 16-1 at 2 ¶ 12). Reyes and the foreman exchanged words, after which Reyes stormed into the office and began yelling at Mullendore that he needed to go see a doctor and that Outdoor Detail needed to pay for it.[6] (DE 16-1 at 2 ¶¶ 12-13). When Mullendore questioned him about that, Reyes continued to curse and to claim that he was injured at work two weeks earlier. (DE 16-1 at 2 ¶ 13). Mullendore responded that Reyes was not permitted to use his worker's compensation insurance. (DE 20-1 at 1 ¶ 9). Mullendore then terminated Reyes's employment and banned him from the property. (DE 20-1 at 2 ¶ 10).

Mullendore considered Reyes's employment terminated as of April 24, 2013, because he had walked off the job. (DE 16-1 at 2 ¶ 15). After Reyes left on April 24, 2013, Mullendore called the police to report the threatening nature of Reyes's comments and actions toward him and Outdoor Detail. (DE 16-1 at 2 ¶ 14).

## B. Reyes's Affidavit

Reyes generally claims in his affidavit that throughout his employment with Outdoor Detail he "was forced to do more difficult work than non-Hispanic white employees and denied workplace benefits offered to non-Hispanic white employees including paid time off, holiday pay, pay raises, and off-season unemployment insurance." (DE 20-1 at 1 ¶¶ 4-5). He further

---

[6] Mullendore claims that this altercation was the first time that Reyes notified him about any alleged work injury. (DE 20-1 at 2 ¶ 16).

4

attests that "[t]here were non-Hispanic white employees who received these workplace benefits and had not worked a full continuous year."[7] (DE 20-1 ¶ 5). Reyes also attests that he and other Hispanic employees were "called racially offensive names, including 'tomato pickers' and 'wetbacks.'" (DE 20-1 at 2 ¶ 6).

Reyes, however, does not describe how his work was more difficult than other non-Hispanic employees or provide an instance in which he was required to do more difficult work. Nor does he describe the circumstances in which, or the frequency with which, he and other Hispanic employees were subjected to derogatory language targeting their national origin or otherwise expressing a bias against Hispanics. Likewise, Reyes does not identify with specificity any similarly-situated non-Hispanic individuals who were assigned easier work tasks or who were given paid vacation days, holiday pay, off-season unemployment insurance, or pay raises despite having worked at Outdoor Detail for less than one full year. (*See* DE 20-1).

## II. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24

---

[7] According to Outdoor Detail's handbook, employees are eligible to receive paid vacation days and holiday pay "after one full year of service." (DE 16-1 at 2 ¶¶ 18-19; DE 16-1 at 5-6).

F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. DISCUSSION

*A. Summary Judgment Will Be Granted on Reyes's § 1981 Discrimination Claim*

Outdoor Detail seeks summary judgment in its favor on Reyes's § 1981 discrimination claim. As already explained, Reyes claims that Outdoor Detail discriminated against him on the basis of his Hispanic national origin when it assigned him more difficult work tasks than non-Hispanic employees; denied him paid vacation days, holiday pay, off-season unemployment insurance, and pay raises; and subjected him to derogatory language targeting his Hispanic national origin.

"Section 1981 bars employers from discriminating and retaliating against employees based on the employee's race or national origin."[8] *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006)).

---

[8] The parties do not dispute that an at-will employment relationship is sufficiently contractual in nature to maintain a § 1981 action for discrimination. (*See* DE 17 at 6; DE 28); *see Walker v. Abbott Labs.*, 340 F.3d 471, 478 (7th Cir. 2003).

6

"Race and national origin discrimination claims can be established in one of two ways: the direct and indirect methods of proof." *Id*. (citing *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012)). Thus, the same analysis applies to theories of liability whether under Title VII or § 1981. *See Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015) (citations omitted).

The direct method requires the plaintiff to provide either direct or circumstantial evidence of intentional discrimination on the basis of race or national origin by the decision-maker. *Tank*, 758 F.3d at 805. "Direct evidence requires an admission of discriminatory intent." *Id*. (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014)). Circumstantial evidence typically includes:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Id.* (citing *Alexander*, 739 F.3d at 979).

The indirect method, that is, the burden-shifting formula in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires that a plaintiff establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Id*. at 809 (citing *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)). "A similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects." *Id*. (citation and internal quotation marks omitted). If the plaintiff establishes

7

a prima facie case of discrimination, the burden then shifts to the defendant to state "a legitimate, nondiscriminatory reason for the employment action." *Id*. at 809-10 (citation omitted). If the defendant does so, the burden shifts back to the plaintiff, "who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id*. (citation omitted).

Regardless of the method employed, "when all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 876 (7th Cir. 2014) (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)); *see also Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) (stating that the Seventh Circuit Court of Appeals has, "over the past several years," "questioned the utility of the distinctions between" these two methods of proof, "recognizing that both methods of proof converge on the same fundamental question: could a reasonable trier of fact infer retaliation or discrimination, as the case may be?" (citations omitted)).

Reyes asserts that his § 1981 discrimination claim survives summary judgment under both the direct and indirect methods; however, he never actually analyzes his claim under the direct method. (*See* DE 20 at 5). Presumably, Reyes believes that his statement in his affidavit that he and other Hispanics were subjected to derogatory language targeting their national origin is sufficient to demonstrate or infer intentional discrimination on the basis of national origin. As explained earlier, Reyes states in his affidavit: "While I worked at Outdoor Detail, Hispanic employees were also called racially offensive names including 'tomato pickers' and 'wetbacks.'" (DE 20-1 at 2 ¶ 6).

8

Reyes, however, never specifies who made these derogatory comments targeting his national origin or when this purported name-calling occurred. As such, even if someone at Outdoor Detail harbored bias against Hispanics, Reyes does not show that such bias had any effect on Outdoor Detail's decisions concerning his job assignments and the denial of paid vacation days, holiday pay, off-season unemployment insurance, and pay raises. Isolated comments of racial bias or bias based on national origin are insufficient to establish that a particular decision was motivated by discriminatory animus, except when the remarks are made by the decision maker "(1) around the time of, and (2) in reference to, the adverse employment action complained of." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (quoting *Hunt v. City of Markham*, 219 F.3d 649, 652-53 (7th Cir. 2000)); *see also Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) (stating that a remark can raise an inference of discrimination when it "was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action" (citation omitted)). Here, Reyes fails to make such a showing, and thus, his general statement in his affidavit, standing alone, is insufficient to establish that any purported adverse actions by Outdoor Detail were motivated by discriminatory animus.[9]

As to the indirect method, Reyes argues that he was treated less favorably than similarly-

---

[9] With respect to the alleged derogatory statements against Hispanics, Reyes does not specifically advance a § 1981 claim of hostile work environment based on national origin in his complaint. To succeed on a claim of hostile work environment based on national origin, a plaintiff must show that "(1) he was subjected to unwelcome harassment, (2) the harassment was based on his national origin, (3) the harassment was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability." *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006) (alteration brackets and citation omitted). Here, Reyes does not describe the frequency of the purported name-calling. As such, on this record, a reasonable factfinder could not conclude that the working environment was objectively hostile. *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004) ("[A] plaintiff's *repeated* subjection to hearing [the word 'n——r'] could lead a reasonable factfinder to conclude that a working environment was objectively hostile." (emphasis added) (citations omitted)).

9

situated non-Hispanic employees, who were given easier job assignments and paid vacation days, holiday pay, off-season unemployment insurance, and pay raises even though they had not worked a full year for Outdoor Detail. (DE 20 at 6; DE 20-1 at 1 ¶ 5). A similarly-situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Although the relevant factors may vary depending on the case, a court should consider whether the plaintiff and the purportedly similarly-situated employees had the same supervisor; were subject to the same standards; and had comparable experience, education, and other qualifications. *Id.* (citations omitted). A plaintiff need not demonstrate complete identity; "[w]hat is required is 'substantial similarity' given all relevant factors in the case." *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011) (citation omitted).

Reyes, however, has not presented any admissible facts about any particular similarly-situated non-Hispanic worker that would tend to show that such a worker was treated more favorably than him. *See Tank*, 758 F.3d at 810. That is, Reyes does not identify *any* non-Hispanic employee by name or with specificity, much less show that such employee had the same supervisor; was subject to the same standards; worked similar hours; and had comparable experience, education, and other qualifications. *Patterson*, 281 F.3d at 680. "It [is] up to [the plaintiff] to find others who were directly comparable [to him] in all material respects." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (citations and internal quotation marks omitted). Absent such a showing, Reyes's generalized assertions cannot support a discrimination claim. *See Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012) ("[A] conclusory allegation is insufficient to raise a genuine issue of material fact.").

Reyes's failure to establish any one of the four elements of the prima facie case renders summary judgment appropriate for Outdoor Detail. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1142 (7th Cir. 1998) ("Fisher fails to raise a genuine issue of material fact that he could satisfy the prima facie case requirement that a similarly-situated employee received more favorable treatment . . . . This court need not proceed any further in the *McDonnell Douglas* analysis once we determine that a claimant has failed to make a prima facie case." (citations omitted)); *see also Bio v. Fed. Express Corp.*, 424 F.3d 593, 596-98 (7th Cir. 2005); *Jones v. Nat'l Council of Young Men's Christian Assocs.*, 48 F. Supp. 3d 1054, 1105 (N.D. Ill. June 18, 2014) ("Where the plaintiff has not even attempted to identify a single employee with enough common factors to allow for a meaningful comparison, . . . no reasonable factfinder could conclude that the plaintiff has met his burden for that element of a *prima facie* case."). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept [his] version of events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citation and internal quotation marks omitted).

Therefore, because Reyes fails to produce evidence sufficient to demonstrate or infer intentional discrimination under the direct method, and because Reyes fails to identify with specificity any similarly-situated individual outside of his protected class who was treated more favorably than him under the indirect method, summary judgment will be GRANTED in Outdoor Detail's favor on Reyes's § 1981 discrimination claim.

### B. *Reyes's* Frampton *Claim Will Be Remanded to State Court*

As to Reyes's *Frampton* claim, "[n]ormally, when all federal claims are dismissed before

11

trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (citation and internal quotation marks omitted); *see* 28 U.S.C. § 1367(c). Courts acknowledge three exceptions to this rule: "when (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Id.* (citation and internal quotation marks omitted).

As to the first exception, this case originated in state court and was removed here; thus, the statute of limitations is not an issue. *See, e.g.*, *Lantz v. Office of Jackson Twp. Tr.*, 938 F. Supp. 2d 810, 822 (N.D. Ind. 2013); *MacDonald v. LIFE, Inc.*, No. 1:10-CV-68 JD, 2012 WL 1095211, at *6 (N.D. Ind. Mar. 30, 2012). Nor has the Court committed "substantial judicial resources" to the this case or the *Frampton* claim specifically, as the Court has resolved Reyes's § 1981 discrimination claim on summary judgment. *See Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (finding that "substantial judicial resources" had not yet been committed to the case where the district court had disposed of the federal claims on summary judgment); *Lantz*, 938 F. Supp. 2d at 822. Although the parties have engaged in discovery in this forum, those discovery efforts need not be duplicated because the record survives on remand. *See MacDonald*, 2012 WL 1095211, at *6. Finally, given the proximity in time between Reyes's assertion of a worker's compensation claim and his termination, it is not absolutely clear how the *Frampton* claim should be decided. *See Mack v. Great Dane Trailors*, 308 F.3d 776, 784 (7th Cir. 2002) ("Depending on the circumstances, . . . causation may be inferred from the 'rapidity

and proximity in time' between the employee's filing for benefits and the discharge . . . ." (citations omitted)); *Lantz*, 938 F. Supp. 2d at 822; *MacDonald*, 2012 WL 1095211, at *6.

Therefore, under 28 U.S.C. § 1367(c)(3), the Court declines to continue to exercise jurisdiction over Reyes's *Frampton* claim and will remand the case to Allen Superior Court where this case originated. *See Johnson v. Siemens Bldg. Techs., Inc.*, 273 F. App'x 543, 549 (7th Cir. 2009) (concluding that the district court reasonably exercised its discretion in declining to exercise supplemental jurisdiction over plaintiff's state-law retaliatory discharge claim); *Noriega v. BRC Rubber Grp. Inc.*, 1:04-CV-0057, 2005 WL 3132348, at *12 (N.D. Ind. Nov. 22, 2005) (granting summary judgment on plaintiff's Title VII and ADA claims that created federal jurisdiction and dismissing without prejudice plaintiff's *Frampton* claim so that plaintiff could pursue it in state court).

## IV.  CONCLUSION

For the foregoing reasons, Outdoor Detail's motion for summary judgment (DE 16) is GRANTED with respect to Reyes's § 1981 discrimination claim, and Outdoor Detail's motion to strike (DE 23) is DENIED AS MOOT.  The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Reyes's state-law retaliation claim and REMANDS this case to Allen Superior Court.  The Clerk of Court is DIRECTED to treat this matter as closed.

SO ORDERED.

Entered this 6th day of February 2017.

/s/ Susan Collins
Susan Collins,
United States Magistrate Judge